IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-247-BO-BM

| | | |
|---|---|---|
| OMNISOURCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| BURGESS GROUP CONSOLIDATED, | ) | |
| LLC, and BURGESS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on defendants' motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiff has responded, defendant has replied, and a hearing on the motion was held before the undersigned on September 18, 2025, at Raleigh, North Carolina. In this posture, the motion is ripe for disposition. For the reasons that follow, the motion is granted.

## BACKGROUND

Plaintiff commenced this action by filing a complaint in Indiana state court. [DE 6]. Defendants removed the action to the United States District Court for the Northern District of Indiana, which subsequently transferred the action to this Court under 28 U.S.C. § 1404(a). *See* [DE 1]; [DE 49]. In its amended complaint, plaintiff alleges claims arising from multiple alleged breaches of contract.

The contract in question is a real estate sale and purchase agreement (Purchase Agreement) for property located in New Hanover County, North Carolina, entered into on November 22, 2021. The subject property is located at 2830 U.S. Highway 421 N. in Wilmington, North Carolina

(Subject Property) and plaintiff alleges that the sale included, among other things, any easements and rights, if any, inuring to the benefit of the property or the seller and any and all rights in and to any licenses, leases, or assets of any type which pertained to the property. Plaintiff alleges that, prior to closing on the sale of the Subject Property, defendant and its owner were made aware of a Track Use Agreement between plaintiff and Louisiana Pacific Corporation (Louisiana-Pacific), under which Louisiana-Pacific had permission to use the rail located on the Subject Property in exchange for paying for maintenance-related costs. The Track Use Agreement granted a non-exclusive license to Louisiana-Pacific[1] to use railroad tracks located on the Subject Property for its outbound and inbound rail freight traffic. *See* [DE 61-4]. The Track Use Agreement was entered into in 2008 and was set to expire in 2033, with an option for two additional five-year terms. *Id.* The Track Use Agreement was not recorded. *See* [DE 61] at 16.[2]

Plaintiff alleges that Vince Burgess (Mr. Burgess), the owner of defendant Burgess Group Consolidated, agreed to assume the Track Use Agreement with the sale of the Subject Property. The Subject Property was transferred to defendant Burgess Group Consolidated (BGC) through a special warranty deed on June 17, 2022 (Deed). The same day, plaintiff emailed Louisiana-Pacific, copying Mr. Burgess, notifying Louisiana-Pacific that the sale had occurred and providing Mr. Burgess's contact information. BGC shortly thereafter sold the Subject Property to a related entity, 2830 Highway 421 Owner, LLC (2830 Highway 421).

In approximately July 2022, a dispute arose in which 2830 Highway 421, allegedly acting in concert with BGC and/or defendant Burgess Corporation, refused to permit Louisiana-Pacific or any entity to which Louisiana-Pacific sold its property to use the rail on the Subject Property.

---

[1] The Track Use Agreement was entered into by Recycle South and Louisiana-Pacific. Plaintiff is the successor in interest to Recycle South under the Track Use Agreement. *See* [DE 61] at 16.
[2] Citations to page numbers are to the page number generated by CM/ECF unless otherwise indicated.

Louisiana-Pacific ultimately paid $2.2 million to 2830 Highway 421 in exchange for an agreement to use the track across the Subject Property. Louisiana-Pacific then filed an arbitration demand against plaintiff, seeking to recover the $2.2 million, plus costs. Plaintiff notified BGC of the arbitration and demanded that BGC indemnify plaintiff for all expenses and damages related to the arbitration pursuant to indemnity provisions in the Purchase Agreement.

BGC and Burgess Corporation did not accept plaintiff's indemnity demand. Plaintiff defended itself in the arbitration, and the arbitrator ultimately determined that plaintiff was liable to Louisiana Pacific for $2.2 million plus attorney fees and interest. Plaintiff incurred a total of $2.6 million in liability to Louisiana-Pacific. Plaintiff filed this action seeking to recover the $2.6 million from BCG under an indemnity clause found in the purchase agreement.

Plaintiff also brings claims related to defendants' alleged failure to perform under the purchase agreement by failing to move a shredder located on the Subject Property. The claims arising from defendants' alleged breach of the Shredder Moving Agreement are not the subject of defendants' motion for partial judgment on the pleadings.

## DISCUSSION

Defendants seek judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on plaintiff's first three claims for relief: breach of contract and for indemnity (Count I), breach of contract for failure to perform under the Purchase Agreement (Count II), and breach of oral contract to assume Track Use Agreement (Count III). A Rule 12(c) motion is considered under the same standard as a Rule 12(b)(6) motion. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011). Thus, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially

3

plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, this standard does not permit a plaintiff to merely plead the elements of a cause of action alongside legal conclusions; the Court need not accept those as true. *Id.* at 555. The primary distinction between Rules 12(b)(6) and 12(c) is that Rule 12(c) permits a court to consider a defendant's answer in addition to plaintiff's complaint. However, a defendant may not rely on allegations of fact as provided in the answer if they are contradictory to the facts presented in the complaint. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Judgment on the pleadings should be granted therefore only "where the moving party is clearly entitled to the judgment it seeks as a matter of law." *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008).

Defendants' motion for judgment on the pleadings is granted. Under North Carolina law, which the parties agree applies, a deed is a contract. *See Hamlet HMA, Inc. v. Richmond Cnty.*, 138 N.C. App. 415, 423 (2000). Accordingly, the ordinary rules of contract construction apply. *See Duke Energy Carolinas, LLC v. Kiser*, 384 N.C. 275, 282 (2023). A court examines the language of the contract, and if the language of the contract is clear and unambiguous, the parties' intentions at the time the contract was executed may be inferred from the language of the contract. *Id.* Here, the Deed plainly fails to reference the Track Use Agreement, either expressly or by incorporation. Moreover, "when a deed fulfills all the provisions of the contract, the executed contract then merges into the deed." *NNN Durham Off. Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 261 N.C. App. 185, 194 (2018). Accordingly, any expectation regarding the Track Use

4

Case 7:25-cv-00247-BO-BM    Document 85    Filed 02/09/26    Page 4 of 8

Agreement which is not reflected in the Deed, including any alleged oral agreement by Mr. Burgess, would have extinguished when the deed was recorded. *Id.*

Even looking to the Purchase Agreements, the parties agreed that title to the Subject Property would be conveyed subject to the permitted exceptions identified in the Purchase Agreement, specifically an unrecorded existing lease with Colonial Materials of Fayetteville. [DE 33-1] ¶¶ 1(c); 6(e). The Purchase Agreement further states that the Colonial Materials lease "is the only lease, possessory agreement, or other occupancy agreement applicable to the [Subject] Property." *Id.* ¶ 7(a)(v). Neither of the amended Purchase Agreements reference the Track Use Agreement. *See* [DE 33-2]; [DE 33-3].

Plaintiff argues that two provisions show that defendants accepted the Subject Property subject to the Track Use Agreement. The first is the "Together With" clause of the Deed, which states that the Subject Property is being transferred

> TOGETHER WITH: (i) all buildings and improvements located on the aforesaid lot or parcel of land, (ii) all fixtures affixed to all such buildings and improvements, (iii) all easements, rights of way, privileges, licenses, hereditaments, appurtenances and all other rights and benefits appurtenant or in any way related to, and/or demised under any lease of or other context or agreement for the use of the aforesaid land, and (iv) all strips and gores and any land lying in the bed of a public road, highway or other access way, open or proposed adjoining the aforesaid land.

[DE 33-4] at 2. As defendants have argued, the "Together With" language serves to pass benefits, in other words, "all other rights and benefits" to the land. The Deed separately identifies that title to the Subject Property is subject to certain exceptions, which are set out in Exhibit B to the Deed. *Id.* Exhibit B sets out, among other things, utility easements, a recorded agreement between Seaboard Air Line Railway and Atlantic Coast Line Railroad, and the lease between plaintiff and Colonial Materials. *Id.* at 5-7. The Track Use Agreement is not included in the Subject To section of the Deed.

5

Plaintiff also argues that the "As Is – Where Is, With All Faults" language in the Purchase Agreement obligated defendants to take the Subject Property subject to the Track Use Agreement. This section of the Purchase Agreement provides that the Subject Property is being purchased by BCG as is, and that plaintiff disclaims any warranty or representation as to

> The quality, nature, adequacy and physical condition of the [Subject Property], including, but not limited to, appurtenances, access, landscaping, parking facilities, and the electrical, mechanical, plumbing, sewage, utility systems, facilities and appliances . . .

*See* [DE 33-1] at 6. Again, the Court agrees with defendants' argument that the "As Is – Where Is" language in the Purchase Agreement serves as a routine warranty disclaimer and does not serve to transfer any obligation under the Track Use Agreement to BCG. Additionally, the Purchase Agreement expressly provides that the *only* lease, possessory agreement, or occupancy agreement that is applicable to the Subject Property is the Colonial Materials lease.

Additionally, as noted above, the Track Use Agreement was not recorded. North Carolina's Connor Act, N.C. Gen. Stat. § 47-18, "was enacted for the purpose of providing a plan and a method by which an intending purchaser can safely determine just what kind of a title he is in fact obtaining." *Watson v. Millers Creek Lumber Co.*, 178 N.C. App. 552, 555 (2006) (internal alteration, quotation, and citation omitted). The Connor Act requires that leases of land for more than three years be recorded in order to be enforceable against third parties. "Thus, under the Connor Act, until such a contract is registered, third parties may deal with the property to which it relates as if no contract existed." *New Bar P'ship v. Martin*, 221 N.C. App. 302, 316 (2012) (cleaned up, citation omitted).

Plaintiff argues that the Track Use Agreement is a license, and thus that the Connor Act does not apply. This argument is unavailing. Under North Carolina law, a license to use property is typically a revocable, personal right. *See Sanders v. Wilkerson*, 285 N.C. 215, 219 (1974). Here,

6

the Track Use Agreement was executed for an initial period of twenty-five years, obligates the property owner to inspect and maintain the tracks, imposes insurance requirements, includes an arbitration provision, and prohibits assignment of the agreement without written consent. *See* [DE 61-4]. The Track Use Agreement, despite its name, was not a license, but rather was a lease. It was thus subject to the Connor Act, and, not having been recorded, is not enforceable against defendants.

Plaintiff further argues that even if the Connor Act applies, the Track Use Agreement is still enforceable against BCG because BCG had knowledge of it and agreed to assume it. Under the Connor Act, "[a]ctual knowledge, however full and formal, of a grantee in a registered deed of a prior unregistered deed or lease will not defeat his title as a purchaser for value in the absence of fraud or matters creating estoppel." *New Bar P'ship*, 221 N.C. App. at 316 (emphasis and citation omitted). Plaintiff contends that Mr. Burgess's actual knowledge of the Track Use Agreement and his alleged agreement to assume it amounts to estoppel. But the amended complaint fails to allege fraud on any grounds, and the fact that Mr. Burgess had knowledge of the Track Use Agreement, alone, does suffice to operate as estoppel. *See Terry v. Bros. Inv. Co.*, 77 N.C. App. 1, 6 (1985) ("property must be conveyed 'subject to' or in subordination to such prior [unrecorded] encumbrance" for estoppel to apply). As discussed above, neither the Deed nor any of the Purchase Agreements reference the Track Use Agreement in any way. Thus, BCG was not estopped by Mr. Burgess's alleged knowledge of the Track Use Agreement.

Finally, the indemnity provision in the Purchase Agreement does not apply to the arbitration award. The indemnity provision by its express terms applies to claims "relating to the physical or environmental condition of the [Subject] Property." [DE 33-1] at 7. The arbitration demand by Louisiana-Pacific is based solely on plaintiff's failure to assign the Track Use

7

Agreement to the buyer of the Subject Property. *See* [DE 61-8]. Plaintiff cannot state a claim for breach of the indemnity provision based on the Louisiana-Pacific arbitration.

In sum, for the foregoing reasons and those reasons argued by defendants in their motion and memoranda, defendants have demonstrated that judgment on the pleadings on the specified claims is warranted, and their motion is granted.

## CONCLUSION

Accordingly, the Court determines that defendants are entitled to judgment on the pleadings in their favor on plaintiff's first, second, and third claims for relief. Defendants' motion for partial judgment on the pleadings [DE 67] is GRANTED. The case will proceed on plaintiff's remaining claims for relief.

SO ORDERED, this **9** day of February 2026.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE